## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MAYME HOLCOMBE and ) | |
| JOCK CHANDLER, ) | |
| ) | CIVIL ACTION NO.: |
| Plaintiffs, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| NOVO NORDISK, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Mayme Holcombe and Jock Chandler ("Plaintiffs"), and file this Complaint for Damages against Defendant Novo Nordisk, Inc., ("Defendant" or "Nordisk"), showing the following:

## NATURE OF THE ACTION

1.

Plaintiffs, pharmaceutical sales representatives ("PSRs"), bring this lawsuit against Defendant for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 et seq. This action claims that Nordisk violated the wage and hour provisions of the FLSA by depriving Plaintiffs of their lawful overtime wages.

2.

On October 14, 2009, the U.S. Department of Labor filed an amicus brief in the <u>In Re Novartis Wage and Hour Litigation</u>, No. 09-0437 in the Federal Court of Appeals for the Second Circuit, concluding that pharmaceutical drug representatives such as Plaintiffs do not qualify as exempt from overtime under the outside sales or administrative exemptions of the FLSA because they neither "make sales" nor exercise sufficient discretion in executing their job duties.

3.

Plaintiffs allege that they regularly worked overtime hours, as defined by the FLSA, and are entitled to overtime compensation for those hours.  For at least three years prior to the filing of this Complaint, Defendant committed widespread violations of the FLSA by, among other violations, misclassifying Plaintiffs as employees exempt from overtime pay and failing to pay Plaintiffs for overtime hours worked in excess of forty (40) hours per week at a rate of one-and-one-half times their regular rate of pay.

4.

Plaintiffs seek unpaid compensation, an equal amount of liquidated damages, and prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. §§ 206, 207 and 216.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(4) because this case is brought under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq.

6.

In accordance with 28 U.S.C. § 1391 and 29 USC § 216(b), venue is appropriate in this Court as all of the unlawful actions complained of occurred in the Northern District of Georgia.

## PARTIES

7.

Plaintiffs are residents of the State of Georgia and reside in the Northern District of Georgia and are subject to the jurisdiction of this Court.

8.

Plaintiffs routinely performed non-exempt work in excess of forty (40) hours per work week, without receiving the overtime wage differential as required by Federal law.

9.

Plaintiffs were "employees" of Defendant as defined under FLSA § 3(e), 29

U.S.C. § 203(e).

10.

During their employment with Defendant, Plaintiffs worked an amount of time that was more than forty (40) hours per workweek and were not paid an overtime wage differential.

11.

Nordisk is a private Delaware corporation that employs PSRs nationwide who market its branded diabetes prescription pharmaceutical products to surgeons and hospitals, general/family practitioners, pain specialists, and even diabetes centers and clinics.  Moreover, all company-wide marketing materials, communications and training videos are disseminated to PSRs from Nordisk.

12.

At all times material to this action, Defendant was a private corporation engaged in interstate commerce, with its gross revenues exceeding $500,000 per year.

13.

At all times material to this action, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the definition of FLSA § 3(r) and (s), 29 USC § 203(r) and (s).

14.

Defendant is an "employer" within the definition of the FLSA § 3(d), 29 USC § 203(d).  Defendant is governed by and subject to FLSA § 4 and § 7, 29 USC § 204 and § 207.

15.

At all relevant times, Defendant was and is legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiffs.

16.

At all relevant times, the unlawful conduct against Plaintiffs as alleged herein was actuated, in whole or in part, by a purpose to serve Defendant.  At all relevant times, upon information and belief, the unlawful conduct alleged herein was reasonably foreseeable by Defendant and committed under actual or apparent authority granted by Defendant such that all of the alleged unlawful conduct is legally attributable to Defendant.

17.

Defendant may be served with process via its Registered Agent, CT Corporation System at 155 Federal Street, Suite 700, Boston, MA 02110.

## FACTUAL ALLEGATIONS

18.

Plaintiff Holcombe worked as a Senior Diabetes Care Specialist for Nordisk from July 17, 2006 up until her termination on May 24, 2010.

19.

Plaintiff Chandler began working for Nordisk on April 14, 1997. From June 2010 until his termination on September 30, 2010, he was a Diabetes Care Specialist.

20.

Plaintiffs Holcombe's and Chandler's primary responsibility in their position at Nordisk was to call on practicing physicians and hospitals in order to educate them regarding Defendant's products.

21.

Defendant treated Plaintiffs as exempt under FLSA § 213(a) from the statute's overtime pay requirements.

22.

Defendant failed to pay Plaintiffs for hours worked over forty (40) per week at a rate of one-and-one-half time their regular rate of pay.

23.

Nordisk controlled and directed every significant facet of Plaintiffs daily job activities as follows:

- Nordisk established and provided Plaintiffs with target "account" lists and a promotional budget based on pre-formulated Company-wide and District-level business plans. These "accounts" included influential members of a given healthcare institution, such as physicians, nurses, pharmacists and staff.

- Nordisk developed both the oral and written communications that Plaintiffs disseminated to doctors, hospitals, pharmacists and others.

- Nordisk trained Plaintiffs to give a scripted presentation about the pharmaceuticals that they promoted. Plaintiffs could not convey any written materials to physicians other than what Nordisk gave her. Nordisk supplied Plaintiffs with manuals, textbooks, marketing materials and other assigned equipment to be used for messaging and sample accountability.

- Plaintiffs were only allowed to discuss the selling points of the product with key personnel as well as warnings of the product according to FDA guidelines, which Nordisk provided.

- Nordisk notified Plaintiffs when there were product updates and gave them

detailed instructions where and how to obtain updated promotional materials.

- Nordisk required that Plaintiffs closely document their activities via a program called "AdvantEDGE", and that they submit regular reports about their activities for the day, even if they were working on the weekend.

- Plaintiffs must go through approximately two weeks of home training, two to three weeks of classroom training and one week of training in Chicago, IL in order to become a PSR.

- Nordisk specifically dictated that Plaintiffs were not allowed to create or use any of their own marketing materials.

- Nordisk closely supervised Plaintiffs through its District Business Managers ("DBMs"), which were assigned groups of PSRs within a geographic area or District, to deliver assigned sales goals and related objectives from the strategic sales plan.  District Managers hold PSRs accountable through conference calls and field coaching sessions.  Managers sometimes accompanied Plaintiffs on visits to physicians to ensure that they did not deviate from scripts and guidelines that originate at headquarters.  Deviation from these established policies can result in discipline up to and including

termination.[1]

24.

Plaintiffs had no authority to formulate, affect, interpret, or implement Nordisk's management policies or its operating practices. They were not involved in planning Nordisk's long-term or short-term business objectives, and did not carry out major assignments in conducting operations of Nordisk's business. Plaintiffs had no authority to commit Nordisk in matters that have significant financial impact.

25.

Plaintiffs' primary duty was promotional work directed at key personnel within doctor's offices and clinics.

26.

Even though Nordisk refers to Plaintiffs as sales personnel, Plaintiffs did *not* sell any of Nordisk's products or obtain orders for drug products. Plaintiffs were hired by Nordisk to perform the responsibilities of a Pharmaceutical Sales Representative, which included meeting with medical personnel to stimulate and promote sales, but did not include the duty to obtain legally, binding commitments to buy pharmaceutical drugs, nor obtain orders or make sales. Neither did

---

[1] Plaintiff Chandler was demoted to sales representative from a DBM. He was subject to a performance improvement plan for the entire period in this role. His supervisor monitored his work closely and Chandler did not have any independent authority to deviate from established Nordisk guidelines and procedures.

Plaintiffs recommend particular levels or volume of drug purchases. Further, Plaintiffs did not obtain legally binding commitments from the wholesalers, pharmacies, or patients who actually purchased Nordisk's products. At *most*, Plaintiffs obtained non-binding commitments from physicians to prescribe Nordisk's products for their patients when appropriate. Significantly, even though Plaintiffs visited doctors and promoted pharmaceuticals, federal regulations actually prevent them from selling pharmaceuticals.

27.

Plaintiffs received bonuses based on certain usage metrics, but these compensation amounts allocated to Plaintiffs cannot be properly be classified as sales commissions because they are calculated pursuant to a defective company-wide formula that yields an arbitrary amount which in no way reflects Plaintiffs' effectiveness in promoting the use of certain Nordisk products.

28.

Plaintiffs' primary job duties required them to work overtime, even though the original agreement between Plaintiffs was that they would work forty (40) hours per week in exchange for a salary.

29.

Plaintiffs worked more than forty (40) hours per week.  Nordisk encouraged and often required that Plaintiffs work during and beyond normal business hours in a given week.  For example, Plaintiffs Nordisk required that Plaintiffs present lunch and evening speaker programs intended to educate hospital personnel about Nordisk's products as well as visit hospital departments in the early morning hours in order to make themselves available to respond to inquiries any time of the day and to guarantee accounts that they would respond within a 24-hour period.  Plaintiffs were also expected to spend weekly lunches with physicians.

30.

In addition, Plaintiffs were required to conduct continuing medical education opportunities called Continuing Credit Education (CCE) classes on the weekends, early mornings before working hours and late evenings after work hours; view company-mandated training videos; participate in online training; and call into several company-wide conference calls per month.

31.

Nordisk also expressly required that Plaintiffs travel within their given geographic region to visit doctors and hospital contacts, and provided a company car for this purpose.  Nordisk also provided Plaintiffs with company credit cards,

PDA or cell phones so that they could be reached 24 hours a day, 7 days a week by both Nordisk and their accounts.

32.

Nordisk also provided Plaintiffs with physician and hospital contact lists for their accounts.

33.

Nordisk has intentionally and repeatedly engaged in a practice of improperly misclassifying non-exempt PSRs as salaried exempt employees.

34.

Plaintiffs do not qualify as exempt employees, as defined by the applicable Federal regulations.

**COUNT ONE**
**VIOLATION OF THE OVERTIME PROVISIONS**
**OF THE FAIR LABOR STANDARDS ACT**

35.

Defendant willfully employed Plaintiffs in the aforesaid enterprise for workweeks longer than forty (40) hours and failed to compensate them in excess of forty (40) hours per week at a rate of at least one-and-one-half times their regular rate at which they were employed, contrary to FLSA § 7, 29 U.S.C. § 207.

36.

Pursuant to FLSA § 16, 29 U.S.C. § 216, Plaintiffs bring this lawsuit to recover overtime wage differential, liquidated damages in an equal amount, attorneys' fees, and the costs of litigation.

37.

Defendant repeatedly and willfully violated the FLSA by failing to pay Plaintiffs not less than one-and-one-half times their regular rate for all hours worked in excess of 40 per week.

38.

Defendant's violations of the overtime pay requirements of the FLSA were systemic, voluntary and in reckless disregard of the FLSA.

39.

Defendant repeatedly violated the provisions of the FLSA and the Department of Labor Regulations at 29 C.F.R. 516, by failing to make, keep and preserve adequate and accurate records of the wages, hours and other conditions and practices of employment.

40.

Because Defendant willfully violated the FLSA by misclassifying Plaintiffs as exempt employees, a three year statute of limitations applies to such violations,

pursuant to 29 U.S.C. § 255.

41.

As a result of Defendant's FLSA violations, Plaintiffs have suffered damages by being denied overtime wages in accordance with FLSA § 206 and § 207.

42.

Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of current PSRs and former PSRs.

43.

Because of Defendant's unlawful acts, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

(a) Allow Plaintiffs, at the earliest possible time, to give notice of this collective action, or issue such notice by the Court, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of the initial Complaint for Damages, up through and including the date of this Court's issuance of Court-supervised Notice,

been employed by the Defendant as a PSR. Such persons shall be informed that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were misclassified as an exempt employees, whereas their primary or significant work duties entail duties commonly performed by non-exempt, hourly employees;

(b) Grant Plaintiffs a trial by jury as to all triable issues of fact;

(c) Enter judgment awarding Plaintiffs unpaid wages pursuant to the FLSA § 7, 29 U.S.C. § 207, FLSA § 6, 29 U.S.C. § 206(d), liquidated damages as provided by 29 U.S.C. § 216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. § 216, and court costs, expert witness fees, reasonable attorneys' fees as provided under 29 U.S.C. § 216 and all other remedies allowed under the FLSA;

(d) Grant declaratory judgment declaring that the rights of Plaintiffs have been violated; and

(e) Award Plaintiffs such further and additional relief as may be just and appropriate.

Respectfully submitted this the 2nd day of September, 2011.

**BARRETT & FARAHANY, LLP**

<u>/s/ Meredith J. Carter</u>
Meredith J. Carter
Georgia Bar No. 325422
Amanda A. Farahany
Georgia Bar No. 646135

Attorneys for Plaintiffs

1100 Peachtree Street, NE
Suite 500
Atlanta, Georgia 30309
Telephone: (404) 214-0120
Facsimile: (404) 214-0125
meredith@bf-llp.com
amanda@bf-llp.com